```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
───────────────────────────────

EUGENE A. TODIE,

          Plaintiff,

    -vs-

BUFFALO HALF-WAY HOUSE, INC.,
LESLIE GREATHOUSE, JACQUELINE
DIGGS, MS. GRIGGS, TRACY WOODS, MR.
DAVIS,

          Defendants.

**DECISION and ORDER
No. 1:16-cv-307(MAT)**

───────────────────────────────

## I. Introduction

Proceeding pro se, Eugene A. Todie ("Todie" or "Plaintiff") instituted this action against the Buffalo Half-Way House, Inc. ("Buffalo Halfway House") and the individual defendants, who are or were employees of Buffalo HH (collectively, "Defendants"). Plaintiff asserts violations by Defendants of "17 C.F.R. § 240.15(c)1-2 [sic]," "28 U.S.C. § 1983 [sic]," "42 U.S.C. § 1320d-5," "31 U.S.C. §§ 3729-3733," and "New York State law." (Complaint ¶ 8(C)). According to Plaintiff, these injuries were sustained after he was transferred from FCI Allenwood (ALM) to Buffalo Halfway House in May of 2012, where he apparently resided until completing the sentence of imprisonment entered against him in this Court.

## II. Legal Standards on Initial Screening

The Complaint is before this Court for initial screening under 28 U.S.C. § 1915A. Section 1915A requires district courts to review complaints filed by pro se plaintiffs "before docketing, if

feasible or, in any event, as soon as practicable after docketing," and "to dismiss such complaints if, upon review, the court determines that the complaint fails to state a claim upon which relief can be granted or that the claims raised are frivolous or malicious." Larkin v. Savage, 318 F.3d 138, 140 & n. 2 (2d Cir. 2003) (citing 28 U.S.C. § 1915A).

On initial screening, the court must "[r]ead[ ] [the litigant]'s pro se complaint broadly," Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (citation omitted). A court should not dismiss a complaint if the Plaintiff has stated "enough facts to state a claim that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

**III. Overview of Plaintiff's Complaint**

    **A.    The First Cause of Action**

Plaintiff's First Cause of Action (see Compl. ¶¶ 10-38) sets forth allegations of "unsanitary/unhealthy preexisting" conditions at Buffalo Halfway House such as "[p]arasitic vermin infesting the kitchen" and inadequate handwashing stations and supplies of soap. Plaintiff also alleges he was forced to "surrender his medications" to Buffalo HWH management which deprived him of the "sense of control" over his medical condition that he had while at Allenwood FCI (ALM), and was denied crackers or milk with which to take his medications. Plaintiff also accuses Resident Manager Tracy Woods ("Woods"), to whom he had to turn over his medications, of being a drug abuser. Plaintiff asserts that the allegations set forth under

the First Cause of Action show that Associate Director Jacqueline Diggs ("Diggs") "and her coworkers" violated "17 C.F.R. Ch. 2 § 240.15(c)1-2, along with New York State, other Federal Laws and as previously mentioned, a count of HIPPA [sic] proxy violation[,]" and the Eighth Amendment. (Compl. ¶38). The only dates alleged as relevant to the First Cause of Action are June 6, 2012, and June 8, 2012.

    **B.**    **The Second Cause of Action**

Plaintiff's Second Cause of Action (see Compl. ¶¶ 39-67) sets forth additional allegations of denying Plaintiff his medications and food to take the medications with, forcing him to change the pay telephone he was using multiple times during a phone call which cost him "an egregious amount of money," arbitrarily denying extensions of time when he was late returning to the Buffalo Halfway House due to unfamiliarity with the public transportation system, engaging in "outrageous displays of disrespect" to Plaintiff and his family, and filing a "false violation notice" that resulted in Plaintiff's being returned to prison.

    **C.**    **The Third Cause of Action**

Plaintiff's Third Cause of Action (Compl. ¶¶ 68-79) primarily complains that Diggs ordered the kitchen staff at the Buffalo Halfway House to discontinue Plaintiff's evening snack which allegedly resulted in the deterioration of his medical condition on June 28, 2012.

### D. The Fourth Cause of Action

Plaintiff's Fourth Cause of Action (Compl. ¶¶ 80-100) contains allegations that the kitchen staff at the Buffalo Halfway House did not know how to prepare Kosher food and served him spoiled gefilte fish on June 12, 2012; that Davis and Griggs worked in concert to deny residents the ability to use the water cooler which was refilled with tap water; that he was denied his evening snack on July 2, 2012; and that Diggs wrote a letter stating that if Plaintiff did not take her advice regarding his medical treatment, he would be formally charged with a program violation.

## IV. Analysis

As discussed more fully below, even giving the allegations in the pro se Complaint the broadest construction possible, they do not state plausible claims for relief under the legal theories relied on by Plaintiff.

### A. 17 C.F.R. Ch. 2 § 240.15(c)1-2

Plaintiff has failed to allege a plausible cause of action under "17 C.F.R. Ch. 2 § 240.15(c)1-2," which deals with net capital requirements for brokers or dealers. This section of the Code of Federal Regulations simply is not relevant to Plaintiff's Complaint.

### B. Civil Rights Claims

In order to recover in an action under 42 U.S.C. § 1983, a plaintiff must show a deprivation of his constitutional or statutory rights by a person acting under color of state law. West

v. Atkins, 487 U.S. 42, 48 (1988). Judges in this District have held that the Buffalo Halfway House is not a state actor for purposes of Section 1983 liability. See, e.g., Phillips v. Goord, No. 08-CV-0957A(F), 2009 WL 909593, at *3 (W.D.N.Y. Apr. 1, 2009) ("Because there are no allegations that the Buffalo Halfway House nor defendant Greathouse are 'state actors' the complaint fails to state a claim upon which relief can be granted. The Buffalo Halfway House, Inc's website states that '[it was] incorporated in 1983, [and] was formerly known as BUILD'S Halfway House, founded in 1974 by Eugene L. Pierce under the sponsorship of the BUILD organization. The halfway house is a not-for-profit agency . . . .' This alone would lead one to conclude that the Buffalo Halfway House is a private organization, that is not subject to liability under § 1983. While generally the Court would provide plaintiff an opportunity to amend the complaint with respect to this issue, such an amendment would be futile because the claim of retaliation itself fails to state a claim upon which relief could be granted.") (internal citation omitted).

To the extent Plaintiff attempts to state a Bivens[1] type claim based on Defendant's alleged Eighth Amendment violations, this similarly must fail. See, e.g., Minneci v. Pollard, 565 U.S. 118, 131 (2012) ("[W]here, as here, a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation

---

[1] Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here), the prisoner must seek a remedy under state tort law. We cannot imply a Bivens remedy in such a case."); see also Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 63, 70-71 (2001) (holding that a Bivens action does not lie against a private corporation that manages a facility housing federal prisoners).

Furthermore, any Section 1983 or Bivens claim is time-barred. Although the statute of limitations is an affirmative defense, and must generally await a defense motion, dismissal is appropriate where, as here, supporting the statute of limitations defense are set forth in the papers that the plaintiff has submitted. See Sledge v. Guest, 107 F.3d 4, 1996 WL 779921, at *1 (2d Cir. 1996) (unpublished opn.) ("[T]he district court has the power to dismiss a complaint sua sponte on statute-of-limitations grounds where the facts supporting that defense are set forth in the plaintiff's own papers, see, e.g., Leonhard v. United States, 633 F.2d 599, 609 n. 11 (2d Cir.1980), cert. denied, 451 U.S. 908 (1981). . . ."); see also Griffen v. Doe, 71 F. Supp.3d 306, 317-18 (N.D.N.Y. 2014) (sua sponte dismissing pro se plaintiff's Bivens claim based on statute limitations grounds).

"The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case [it] is the three-year period for personal injury actions under New York State law." Shomo v. City of N.Y., 579 F.3d 176, 181 (2d Cir. 2009)

(citation omitted). The statutes of limitations for a Bivens action in Plaintiff's case likewise is borrowed from New York's statute of limitations for personal injury actions. See Kronisch v. United States, 150 F.3d 112, 123 (2d Cir. 1998) ("Federal Courts in New York apply a three-year statute of limitations period to Bivens claims."). Ordinarily, a Section 1983 or Bivens claim "accrues when the plaintiff knows or has reason to know of the harm." Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994) (quotation marks omitted). The Second Circuit has held that the district court may, but need not, apply "the continuing violation doctrine . . . when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs." Shomo, 579 F.3d at 182.  "To assert a continuing violation for statute of limitations purposes, the plaintiff must 'allege both the existence of an ongoing policy of [deliberate indifference to his or her serious medical needs] and *some non-time-barred acts* taken in the furtherance of that policy.'" Id. (quoting Harris v. City of N.Y., 186 F.3d 243, 250 (2d Cir. 1999); brackets in original).

Plaintiff's Complaint was filed on April 20, 2016. The latest date of an alleged instance of the defendants committing a constitutional violation was July 2, 2012. On that date, Plaintiff alleged, "Diggs sent [him] a memorandum thru [sic] her constituent Michael Macaluso harassing Plaintiff" and "stat[ing] that Plaintiff will not receive the treatment of his medical condition as his health care provider instructed [Buffalo Halfway House] staff to

-7-

abide to." (Compl. ¶ 99). It is, however, unclear what treatment was denied by Diggs.[2] In any event, for his claim to be timely, Plaintiff was required to allege at least one constitutional violation within three years of the filing of the Complaint on April 20, 2016. The date of the last incident he alleges, July 2, 2012, was 3 years, 9 months, and 18 days prior to the date the Complaint was filed. Therefore, any claim under Section 1983 or Bivens is untimely.

The Court has considered possible equitable tolling of the statute of limitations, and finds that there is no basis suggested by the Complaint's allegations for invoking that equitable doctrine in this action. See Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004) (party seeking equitable tolling must establish that extraordinary circumstances prevented him from filing the complaint on time, and that he acted with reasonable diligence throughout the period that he seeks to toll).

**C.    HIPAA Violations**

The question of whether HIPAA, the Health Insurance Portability and Accountability Act of 1996, § 102(a), 42 U.S.C.A. § 300gg-22, creates a private right of action has not been answered by the Second Circuit. Those "Circuits that have considered the issue agree that HIPAA creates no private right of action." Bond v.

---

[2] There is one later date mentioned, July 5, 2012, on which Plaintiff asserts that he attempted to "protect his interest regarding the use of the water cooler" as he and the other residents "battled dehydration," but Diggs advised him to "mind his business." (Id. ¶ 100). However, the allegations regarding that date do not assert a constitutional violation.

Connecticut Bd. of Nursing, 622 F. App'x 43, 44 (2d Cir. 2015) (summary order) (citing Dodd v. Jones, 623 F.3d 563, 569 (8th Cir.2010); Wilkerson v. Shinseki, 606 F.3d 1256, 1267 n. 4 (10th Cir.2010); United States v. Streich, 560 F.3d 926, 935 (9th Cir. 2009); Acara v. Banks, 470 F.3d 569, 570–71 (5th Cir. 2006); Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of Am., 639 F. Supp.2d 371, 377 (S.D.N.Y. 2009) (collecting cases across multiple circuits and district courts)).

In Bond, the Second Circuit expressed "doubt" whether HIPAA provided a private cause of action but declined to decide the issue, because any such cause of action "that may exist under HIPAA would not have a longer statute of limitations than either the ADA or Rehabilitation Act claims [asserted by the plaintiff]. . ., which [were] time-barred." Bond, 622 F. App'x at 44. In New York, ADA and Rehabilitation Act claims are both subject to a three-year statute of limitations. See De La Rosa v. Lewis Foods of 42nd Street, LLC, 124 F. Supp.3d 290, 299 n. 14 (S.D.N.Y. 2015) (ADA); Logan v. Matveevskii, 57 F. Supp.3d 234, 267 (S.D.N.Y. 2014) (Rehabilitation Act). Plaintiff alleges that Defendants violated HIPAA on June 6, 2012, when they questioned why he was requesting milk or a biscuit with which to take his medications. (Compl. ¶ 32). This incident, which occurred three years, ten months, and fourteen days prior to the filing of the Complaint, is outside the three-year limitations period. Therefore, even if Plaintiff had a cognizable claim under HIPAA, it is untimely.

**D.     False Claims Act**

Finally, Plaintiff attempts to assert a claim against Defendants under the federal False Claims Act ("FCA"), which "is intended to recover damages from those who defraud the federal government" and which "imposes liability on those who knowingly present, or cause to be presented, false or fraudulent claims for payment, or knowingly make, use, or cause to be used, false records or statements to get false claims paid or approved." United States v. Empire Educ. Corp., 959 F. Supp.2d 248, 253 (N.D.N.Y. 2013) (citing 31 U.S.C. § 3729(a)(1)(A) & (B). Private persons, known as "relators," may file qui tam actions (i.e., actions on behalf of the government) based on alleged violations of Section 3729. See 31 U.S.C. § 3730(c)(3).

As an initial matter, it is clear that Plaintiff is not seeking to vindicate any rights belonging to the federal Bureau of Prisons or any other federal government agency. Rather, he is seeking redress for injury caused by Defendants to *himself*. (See Compl. ¶ 58 ("[O]n 6-30-12 Woods did manage to cause harm to Plaintiff, providing false information to [Buffalo Halfway House] management and concluding her sociopathic crusade against him.")). Moreover, even assuming Plaintiff intended to file suit on behalf of the federal government, he has failed to state a claim under the FCA. Despite several amendments, the FCA's

> focus remains on those who present or directly induce the submission of false or fraudulent claims. A "claim" now includes direct requests to the Government for *payment as well as reimbursement requests made to the recipients of*

-10-

> *federal funds under federal benefits programs*. The [FCA]'s scienter requirement defines "knowing" and "knowingly" to mean that a person has "actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information." And the [FCA] defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."

Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989, 1996 (2016) (internal citations omitted; emphasis supplied). Clearly, Plaintiff's allegations that Woods filed a false misbehavior report against him which caused him to be expelled from the Buffalo Halfway House fall far outside the ambit of conduct which the FCA is intended to address.

**E. Pendent State Law Claims**

"In an action in which the federal court has jurisdiction by reason of the presence of federal-law claims, the court may exercise supplemental jurisdiction (which has its origins in the judicial doctrine of pendent jurisdiction) over related claims asserted under state law." Volmar v. N. Shore Hosp., 216 F. App'x 136, 137 (2d Cir. 2007) (citing 28 U.S.C. § 1367(a)). Where all federal claims are eliminated before trial, "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988); 28 U.S.C. § 1367(c)(3); other citation omitted). Such is the case here.

Since the basis for the Court's jurisdiction is the alleged federal nature of Plaintiff's federal claims, and since the Court is dismissing these claims with prejudice for failure to state a claim, it is appropriate for the Court to decline to exercise pendent jurisdiction over any putative state claims in the Complaint. The dismissal of Plaintiff's state law claims is without prejudice, however. See Volmar, 216 F. App'x at 138 ("[O]nce Volmar's federal claims were dismissed on motion, any alleged state-law claims should have been dismissed without prejudice on the ground that the district court declined to exercise supplemental jurisdiction over them. Although it is not clear to us that state-law claims were asserted, we direct that the judgment be modified to clarify that the dismissal of any asserted state-law claim is based on a lack of jurisdiction. Such a dismissal does not foreclose Volmar's pursuit of such a state-law claim in state court.").

**F.   Leave to Amend is Unwarranted**

Where a pro se litigant's complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). However, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it[,]" Cuoco, 222 F.3d at 112

(citation omitted), an opportunity to amend is not required. As discussed above in this Decision and Order, the problems with Plaintiff's purported causes of action are substantive and cannot be remedied by better pleading. Therefore, amendment would be futile, and the Court declines to grant Plaintiff an opportunity to replead his Complaint. See id. (finding leave to replead would be futile where the complaint, even when read liberally, did not "suggest[ ] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe").

**V.  Conclusion**

For the foregoing reasons, the federal claims in Plaintiff's Complaint are dismissed with prejudice for failure to state a claim, and any state law claims in the Complaint are dismissed without prejudice. Plaintiff is cautioned that his right to pursue further relief in federal court at public expense will be greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. See 28 U.S.C. § 1915(g).

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. Coppedge v. United States, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the

Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   February 11, 2017
         Rochester, New York